COLIN M. PAGE, ESQ.
Colin M. Page (ID: 046401998)
2001 Route 46, Suite 310
Parsippany, New Jersey 07054
T: 973-794-6188; F: 973-201-2209
colin@cmpemploymentlaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUY GREGOIRE,<br><br>    Plaintiff,<br><br>  v.<br><br>BLOOMBERG L.P.<br><br>    Defendant. | Civil Action No.  2:23-cv-4235<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff, Guy Gregoire ("Gregoire"), states by way of Complaint against the Defendant, Bloomberg L.P. ("Bloomberg").

## **PARTIES**

1. Gregoire is a resident of the state of New Jersey.

2. Bloomberg is a Delaware Limited Partnership and is headquartered in New York, New York.

## **JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. The Court has personal jurisdiction over Defendant Bloomberg due to its extensive business dealings in the State of New Jersey.

1

5. Venue is appropriate in the District of New Jersey on the basis that a substantial portion of the actions giving rise to Plaintiff's claims occurred in New Jersey.

## FACTUAL ALLEGATIONS

6. Bloomberg is in the business of providing business and market news, information and analysis primarily through its proprietary platform.

7. Gregoire began working for Bloomberg as a Corporate Bond Evaluator on September 12, 2022, after he was hired away from Refinitiv, a Bloomberg competitor.

8. Gregoire, a graduate of Yale, has extensive experience in bond evaluation, having worked in fixed-income for various financial institutions for forty (40) years.

9. Prior to working for Bloomberg, Gregoire had never had any significant performance issues and been regarded as a good performer at all of his prior jobs.

10. During his employment with Bloomberg, Gregoire worked from both remotely from his home in New Jersey, from Bloomberg's offices in New York City and from its offices near Princeton, New Jersey.

11. Gregoire reported to Keith Gudhus, Team manager.

12. From the onset of his employment, Gudhus seemed to have it out for Gregoire.

13. Gudhus continually nit-picked Gregoire's work and constantly criticized him in incredibly demeaning language and tone.

14. Moreover, Gudhus used inappropriate sexualized profanity towards and around Gregoire.

15. On a call in February 2023, when Gregoire was working from home, Gudhus' lost it and subjected Gregoire to a stream of abusive sexualized profanity.

16. The call involved Gudhus' questioning of Gregoire's response to an exception

report on a bond where the Bloomberg algorithm had changed the price.

17.  When Gregoire asked why the algorithm had changed the price, Gudhus told Gregoire that he didn't "fucking deserve to know the answer."

18.  During the conversation, Gudhus sarcastically sneered "We could have a fucking monkey in the chair if all you are going to do is let the fucking algorithm set prices."

19.  Gudhus added that he found Gregoire so "fucking frustrating."

20.  Notably, this conversation was overheard by Gregoire's wife who was appalled by the language used by Gudhus in what was supposed to be a professional business meeting.

21.  On another occasion in February, Gudhus, who is known through the office as a paranoid, hypochondriac and germaphobe, immediately exploded when coming into the office because he thought someone had touched his chair.

22.  Upon seeing his chair, Gudhus screamed "Who touched my fucking chair." He then immediately turned to blame Gregoire yelling " Guy, was someone sitting in my fucking chair."

23.  On or about Monday, May 8th Gudhus brought up the topic of the individuals that had protested the death of Jordan Neely at the hands of a white subway passenger who used a choke hold to restrain him.

24.  Gudhus in a racist rant, claimed loudly that the protesters were "losers" and that the "fucking train should have run them over."

25.  While Gregoire had grown used to tough language in his forty years in the financial industry, he had never experienced anything remotely close to Gudhus' abuse.

26.  Moreover, Gregoire, a Yale graduate with forty years of financial experience, had never experienced anything as insulting as being called a "fucking monkey."

27. The use of sexualized profanity created a sexually hostile working environment for Gregoire.

28. Bloomberg has policies against harassment and bullying that encourage individuals to make internal complaints to Bloomberg's human resources and promise that employees that make complaints will not experience retaliation.

29. Gregoire first reported Gudhus' harassment and abuse to Chris Wild, Bloomberg's Human Resources Representative on or about April 13, 2023.

30. The report followed a meeting where Gudhus gave Gregoire a written warning and informed Gregoire that he was going to be placed on a performance improvement plan, which Gregoire understood to be a prelude to termination of his employment.

31. Gregoire followed up this conversation with an e-mail documenting his complaint and asking that he be reassigned to another manager while his complaint was being investigated.

32. Upon information and belief, Gudhus was informed that Gregoire had made a formal complaint of harassment and bullying against him.

33. Wild confirmed via e-mail that Gregoire's complaint would be investigated, but stated that Gudhus would continue to manage Gregoire through his performance improvement plan.

34. No one from Bloomberg followed up to interview Gregoire regarding his harassment and bullying complaints.

35. On or about, May 10, Gregoire followed up with Wild to complain about Gudhus' racist comments about the Neely protesters and further use of sexualized profanity.

36. Again, no one followed up with Gregoire regarding his complaints.

37. Eight days later, Gregoire was informed by Gudhus and Wild that his employment

was being terminated allegedly due to poor performance.

38. The issues cited by Gudhum either were not actually problems or were not the types of issues that would justify terminating Gregoire's employment.

## CLAIM ONE – HOSTILE WORK ENVIRONMENT

39. Plaintiff repeats and realleges the allegations set forth above as if set forth at length herein.

40. Defendant, through repeated use of sexualized profanity, created a sexually hostile working environment in violation of the New Jersey Law Against Discrimination (NJLAD) and New York City Human Rights Law (NYCHRL).

41. Plaintiff complained about the hostile working environment and no action was taken by Defendant to correct or stop the harassment.

42. Defendant caused Plaintiff to suffer emotional harm.

43. Defendant's acts were malicious and/or Defendant acted with a wanton and willful disregard for Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment against Defendant and seeks emotional distress damages, punitive damages, interest, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

## CLAIM TWO – RETALIATION

44. Plaintiff repeats and realleges the allegations set forth above as if set forth at length herein.

45. Plaintiff complained about conduct that he reasonably believed created a hostile work environment in violation of the NJLAD and NYCHRL.

46. Defendant retaliated against Plaintiff and terminated his employment for complaining about harassment in violation of the NJLAD and NYCHRL.

47. Defendant caused Plaintiff to suffer economic and emotional harm.

48. Defendant's acts were malicious and/or Defendant acted with a wanton and willful disregard for Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment against Defendant and back pay and benefits, reinstatement or front pay, emotional distress damages, punitive damages, interest, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

## CLAIM THREE – PROMISSORY ESTOPPEL

49. Plaintiff repeats and realleges the allegations set forth above as if set forth at length herein.

50. Defendant, in order to encourage employees like Plaintiff to make complaints of harassment and workplace bullying promises that employees will not suffer retaliation for making complaints in accordance with its policies.

51. Plaintiff relied on Defendant's promises in its harassment and workplace bullying policies and made complaints of harassment and workplace bullying.

52. Defendant violated its promise to Plaintiff and retaliated against him for making complaints in accordance with its harassment and workplace bullying policies.

53. Had Plaintiff known that Defendant would retaliate against him for making complaints of harassment and workplace bullying in accordance with Defendant's policies, he would not have made the complaints.

54. As a result of his reliance on Defendant's promise, Plaintiff suffered economic and emotional harm.

55. Defendant's acts were malicious and/or Defendant acted with a wanton and willful disregard for Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment against Defendant and back pay and benefits, reinstatement or front pay, emotional distress damages, punitive damages, interest, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

**COLIN M. PAGE, ESQ**
Attorneys for Plaintiff

Date: August 8, 2023

Colin M. Page (ID: 046401998)

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this matter that are triable by a jury.

**COLIN M. PAGE, ESQ**
Attorneys for Plaintiff

Date: August 8, 2023

Colin M. Page (ID: 046401998)